Filed 6/27/23  In re M.V. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.V., a Person Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JULIA S., <br><br> Defendant and Appellant. | F085609 <br><br> (Super. Ct. No. JVDP-21-000250) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Darlene Azevedo Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Mark Doronio, Deputy County Counsel, for Plaintiff and Respondent.

---

[*]        Before Franson, Acting P. J., Meehan, J. and Snauffer, J.

-ooOoo-

Appellant Julia S. (mother) is the mother of M.V. (the child), who is the subject of this dependency case. Mother challenges the juvenile court's order issued at a Welfare and Institutions Code section 366.26[1] hearing that resulted in her parental rights being terminated. Mother contends the juvenile court and the Stanislaus County Community Services Agency (agency) failed to comply with the duty to further inquire under the Indian Child Welfare Act (ICWA). The agency concedes error and the parties have stipulated to an immediate remand for the purpose of complying with the inquiry provisions of ICWA. Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for proceedings to ensure ICWA compliance and otherwise affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In December 2021, the agency filed a petition alleging the child was described by section 300, subdivisions (b) and (j). The allegations involved mother's unresolved substance abuse problem and use of methamphetamine during her pregnancy with the child. The petition further alleged that a legal guardianship was established after mother failed to comply with voluntary family maintenance services the previous year. The whereabouts of the child's father, A.V. (father), were unknown. The agency filed a Parental Notification of Indian Status form (ICWA-020) on behalf of mother indicating there were no circumstances suggesting the child was an Indian child.

The agency's detention report indicated ICWA may not apply based upon mother's denial of Indian ancestry for herself and the child's father. The agency contacted the child's maternal grandmother, paternal great-grandmother, and maternal

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

2.

sister-in-law regarding their ability to take placement of the child. None of the relatives were able to take placement of the child, but the maternal grandmother and paternal great-grandmother each had guardianship of one of the child's siblings. The agency's report does not document any inquiry of these relatives regarding potential Indian ancestry of the child.

At the detention hearing held on December 29, 2021, mother was present and confirmed her denial of Indian ancestry. The child was detained from mother's custody and a combined jurisdiction and disposition hearing was set for January 27, 2022. The agency's jurisdiction and disposition report recommended that the allegations of the petition be found true and family reunification services be provided to mother. The ICWA status section of the report indicated ICWA may not apply based upon the mother's denial, and the paternal great-grandmother denied that father had any Indian ancestry. Two maternal cousins were being evaluated for placement of the child. The report contained no interviews of the maternal grandmother or cousins regarding Indian ancestry.

At the jurisdiction and disposition hearing held on January 27, 2022, the juvenile court sustained the allegations of the petition and ordered mother to participate in family reunification services. The juvenile court also found ICWA was not applicable without addressing the absence of documentation regarding the agency's inquiry of the maternal grandmother or cousins. The agency placed the child with a maternal cousin the day after the hearing.

The agency's report for the six-month review hearing, dated June 16, 2022, recommended that mother's reunification services be terminated and a section 366.26 hearing be set. Mother failed to participate in her services and missed numerous visits with the child. The juvenile court terminated mother's family reunification services and set a section 366.26 hearing for December 6, 2022. The agency's section 366.26 report, filed on November 16, 2022, recommended that the juvenile court terminate the parental

3.

rights of mother and father and order a permanent plan of adoption for the child. The child remained placed in the home of the maternal cousin, who was committed to providing a permanent plan of adoption for the child.

The ICWA section of the report stated the juvenile court's previous finding that ICWA was not applicable without any additional information. The agency also filed an addendum report detailing father's uncertainty about any Indian ancestry in his family. Father directed the social worker to the paternal great-grandmother, who denied any Indian ancestry on father's maternal side of the family. However, she had no information about the paternal side of father's family, and father had no contact with the paternal side of his family.

Mother and father were both present for the contested section 366.26 hearing held on January 20, 2023. The juvenile court followed the agency's recommendation and terminated the parental rights of mother and father and selected a plan of adoption.

## DISCUSSION

Mother contends there were various extended family members, specifically the maternal grandmother, sister-in-law, and maternal cousin, the agency could have interviewed regarding the child's Indian ancestry but did not. Therefore, she argues, the agency failed to fulfill its duty of further inquiry under ICWA and the juvenile court erred in finding ICWA did not apply. The agency concedes this point and we concur.

### A. Applicable Law

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to

4.

invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)). An " 'Indian child' " is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the agency and the juvenile court have an "affirmative and continuing duty to inquire whether a child is or may be an Indian child .…" (Cal. Rules of Court, rule 5.481(a);[3] see § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.) The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2, subd. (a).) Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b), 306, subd. (b).) The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) The court must also require each parent to complete form ICWA-020. (Rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the agency or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child."

---

[3] All rule references refer to the California Rules of Court.

(§ 224.2, subd. (e).)  As recently clarified by the Legislature, a "reason to believe" exists when the juvenile court or agency "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (*Id*., subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the agency "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."  (§ 224.2, subd. (e).)  Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting the Bureau of Indian Affairs, the State Department of Social Services, and the tribes and any other person who may have information. (§ 224.2, subd. (e)(2)(A)–(C).)

The final duty component arises when the court or agency has " 'reason to know' " the child is an Indian child.  (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.)  A "reason to know" exists if one of the following circumstances is present:  "(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[;] [or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe."  (§ 224.2, subd. (d)(1)–(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that the ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the

child is an Indian child.  If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry.  (§ 224.2, subd. (i)(2).)

### B.  *Standard of Review*

Where the juvenile court finds ICWA does not apply to a child after completion of an initial inquiry, "[t]he finding implies that … social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry."  (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.)  We review the juvenile court's ICWA findings for substantial evidence.  (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.)  We must uphold the juvenile court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.  (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.)  The appellant "has the burden to show that the evidence was not sufficient to support the findings and orders."  (*Ibid.*)

### C.  *Analysis*

Pursuant to its duty under section 224.2, the agency asked each parent whether they had any Indian heritage.  The child's mother denied having Indian ancestry.  Father identified the paternal great-grandmother as a person who would have knowledge of his family's ancestry, and she denied any Indian ancestry on the maternal side of father's family.  Based upon this information, the juvenile court found ICWA was not applicable.  The duty of inquiry, however, did not end with asking the parents and a single paternal relative.  The agency was also required under section 224.2, subdivision (b) to ask available maternal relatives.

Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins.  (25 U.S.C. § 1903(2); § 224.1, subd. (c).)  There were at least three extended family members, a maternal grandmother, cousin and sister-in-law, who

7.

were in contact with the agency during the proceedings. The agency either failed to ask these extended family members about Indian ancestry or did not document it.

Under the circumstances, we conclude the agency did not fulfill its statutory duty of inquiry. (§ 224.2, subd. (b).) As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the agency conducted an adequate, proper, and duly diligent inquiry, and its contrary conclusion was an abuse of discretion. Because the failure in this case concerned the agency's duty of initial inquiry, only state law is involved. "Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial. (Cal. Const., art. VI, § 13 ['No judgment shall be set aside … unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice'].)" (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*In re K.H.* (2022) 84 Cal.App.5th 566, 606–607 (*K.H.*).)

However, in *In re A.R.* (2021) 11 Cal.5th 234, the Supreme Court "recognized that while we generally apply a *Watson*[4] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law

---

**4**      *People v. Watson* (1956) 46 Cal.2d 818, 836.

in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id.* at p. 609.) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H.*, at p. 608.) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*Ibid.*) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the agency, or the juvenile court. (*K.H.*, at p. 596.)

"[I]f the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609.) Thus, " 'the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child[, under a standard *Watson* analysis]. The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with A.R.,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply. Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this step is

critical if the rights of tribes under ICWA and California law are to be meaningfully safeguarded, as was intended by Congress and our state Legislature." (*Id*. at p. 591.)

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610.) Here, the agency's inquiry, limited only to mother and father "fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law." (*Id*. at p. 620.) "Where a record is silent or nearly silent with respect to an ICWA inquiry at the first step, a finding of harmlessness necessarily rests on speculation" and "is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes." (*Id*. at p. 611.) Therefore, the error is prejudicial.

Before reversing or vacating a judgment based upon a stipulation of the parties, an appellate court must find "both of the following: [¶] (A) There is no reasonable possibility that the interests of nonparties or the public will be adversely affected by the reversal. [¶] (B) The reasons of the parties for requesting reversal outweigh the erosion of public trust that may result from the nullification of a judgment and the risk that the availability of stipulated reversal will reduce the incentive for pretrial settlement." (Code Civ. Proc., § 128, subd. (a)(8).) Because this case would be subject to reversal to permit compliance with ICWA and corresponding California statutes and rules absent the parties' stipulation, a stipulated remand advances the interests identified by Code of Civil Procedure section 128, subdivision (a)(8). (See *In re Rashad H.* (2000) 78 Cal.App.4th 376, 379–382.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the agency to

10.

comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5).  If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall proceed in compliance with ICWA and related California law.  If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA finding.  In all other respects, the court's order terminating mother's parental rights is affirmed.