Filed 11/29/17; Certified for Publication 12/13/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re ALEXZANDER C. et al., Persons Coming Under the Juvenile Court Law. | B282183 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. RICHARD C., Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK81787) |

APPEAL from orders of the Superior Court of Los Angeles County.  Terry T. Truong, Commissioner.  Affirmed.

Mary C. Wickman, County Counsel, R. Keith Davis, Assistant County Counsel, William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

Daniel G. Rooney, for Defendant and Appellant.

———————————

Richard C. (Father) challenges the juvenile court's jurisdictional finding that his children were at substantial risk of serious physical harm due to his use of methamphetamine. Father also contests the dispositional order removing the children from his custody. We affirm.

## FACTS

Father and Alina C. (Mother) are parents to minors Alexzander C. and Catrina C., and to adult children, Cassandra C. and Moises C.

## I. Prior Dependency Matter

The family was previously reported to the Los Angeles Department of Children and Family Services (DCFS) in 2009 for general neglect of Moises, Alexzander, and Catrina. A petition was filed under Welfare and Institutions Code section 300, subdivision (b),[1] alleging Mother had an unresolved history of drug use which prevented her from providing regular care to her children. The allegations of neglect were substantiated as Mother tested positive for methamphetamine, the children's attendance at school was poor, and the home was "not in the best condition." Mother continued to test positive for methamphetamine from October 2009 to March 2010. She tested negative from May 2010 to June 2010, but then failed to appear for any further drug testing.

The court placed the children with Father, who had tested negative for drugs, and ordered Mother to participate in individual counseling, drug testing, and parenting classes. On August 6, 2010, Mother advised DCFS that she was moving to Ontario and did not intend to return home. She believed Father

---

[1] All further section references are to the Welfare and Institutions Code unless otherwise specified.

2

took good care of the children and they would not miss her. As a result, jurisdiction was terminated for Mother's failure to comply with the court's orders and Father was granted sole custody of the children. Monitored visits were ordered for Mother. Mother moved back in with Father and the children in 2013 or 2014. Mother cared for Alexzander and Catrina while Father worked.

## II.    Current Dependency Matter

On December 16, 2016, DCFS received another report of general neglect against Mother and Father, alleging they were drug addicts and used methamphetamine in the home. The individual also reported Father was a member of a gang and sold drugs in the home. At the time, Alexzander was 13 years old and Catrina was 11. The case social worker arranged to interview Father, Mother, Alexzander, and Catrina on December 28, 2016.

When she arrived, Mother was sweeping the floor and was expecting her. The case social worker observed the home to be neat and clean with working utilities and a sufficient amount of food. The children shared a bedroom, each sleeping on a twin bed, and the parents shared the other bedroom in the home. She did not observe any drug paraphernalia or alcohol in the home or notice any safety hazards.

Both Father and Mother denied any drug use and were observed to be well groomed and clean. They were cooperative during the interview. A background check revealed Mother had two convictions for petty theft. Father did not have a criminal record.

The case social worker assessed the children for physical, sexual, and emotional abuse in the home, but found none. All four family members denied any domestic violence occurred in the home, stating the children's electronics were usually taken

3

away as punishment. The parents reported the children were current with their immunizations, went to the doctor if they were sick, and did not have any medical conditions. Alexzander told the case social worker he was in eighth grade and received A's and B's in school. He also reported he has perfect attendance and is never late. Catrina reported she is in fifth grade and gets good grades.

After Mother's and Father's drug tests came back positive for methamphetamine and amphetamines, the case social worker notified Father that she had concerns for the children's safety. On January 9, 2017, the case social worker took the children into protective custody pursuant to a removal order.

A juvenile dependency petition under section 300, subdivision (b) was filed on January 12, 2017, alleging Mother has a history of substance abuse and is a recent user of amphetamine and methamphetamine, who is incapable of caring for the children appropriately. The petition referenced the prior dependency matter, noting Mother was ordered to have only monitored visits with the children, yet moved back in with them. The petition also alleged Father has a history of substance abuse and is a recent user of amphetamine and methamphetamine, which rendered him incapable of providing the children with appropriate care and supervision. The juvenile court ordered the children detained with their adult sister, Cassandra, and ordered the parents to participate in random drug testing.

**A. Jurisdiction/Disposition Report**

In the jurisdiction/disposition report, DCFS concluded the children were at "high risk" of harm due to Mother and Father's methamphetamine use. The report noted that Father allowed Mother to move back home knowing she had not resolved her

4

drug issues. According to DCFS, "[m]ethamphetamine is an inherently dangerous drug known to cause visual and auditory hallucinations, sleep deprivation, intense anger, volatile mood swings, agitation, paranoia, impulsivity, and depression. As such, a person under the influence of this drug cannot be trusted to safely and appropriately care for a child."

In its interviews with family members, no one expressed any concerns with Mother and Father's drug use to DCFS. In fact, everyone expressed surprise that the parents used methamphetamine, despite the substantiated findings from the prior dependency matter. Mother reported she had used methamphetamine since she was 17 years old. She abstained from drug use during each of her pregnancies, but resumed using methamphetamine to lose weight after giving birth. She reported her mother and father were drug users and there was a family history of alcoholism and drug abuse.

At the time of the prior dependency matter, Mother moved in with her sister in Ontario for three or four years, but kept in touch with Father and the children. She continued to do drugs on the weekends while she lived with her sister. She moved back when she had problems with her sister's husband. Once she moved home, her drug use increased, along with Father's.

She believed she and Father "were functional users, so good that our kids never knew about our drug use until now that all this happened." She explained to DCFS she used methamphetamine to deal with her toothaches. She and Father drank methamphetamine when the children were at home by mixing it with water, but snorted it when the children were not at home. She used methamphetamine two or three times a day. She refused to smoke it because she observed that her friends

who smoked it lost their children.  She told the case social worker, "We thought we were doing good because we were not smoking it or shooting up like them but we now realize that it is time to stop, we are too old for this, we are hitting our 50's, we could have been healthier."

Father admitted to DCFS that he began using methamphetamine at 21, after Mother introduced it to him.  He has used it continuously, though less often (once or twice a month) at times and more often now (four times a day).  Father stated he used the drug to deal with his back pain.  When asked why he did not simply go to the doctor for pain medication, he responded, "Because it was easier to use meth for pain rather than going to a doctor and waiting in line to get medication but then you become addicted.  It just had to come to this for us to stop using."

He kept the methamphetamine in his wallet, which he always kept with him.  Father denied any issues with his family or work as a result of his drug use.  He stated he had been employed in the public works department in the City of Artesia for the past 29 years.

Father and Mother attempted to enroll in the drug treatment program at Kaiser after the children were detained, but the program refused to accept both of them due to confidentiality issues.  Kaiser recommended Father participate in a program in Orange County, but that was too far for him. Father stated they were looking for other nearby treatment programs they could attend together.

The children were interviewed by the case social worker at Cassandra's home and denied knowing their parents used drugs, though they had learned about drugs at school. Alexzander knew what methamphetamine looked like from a school presentation and he stated he had never seen anything that looked like it at home. He also denied ever seeing his parents "high." He understood that to mean they had red eyes and appeared drowsy. The children confirmed they had enough to eat at home, had clothes to wear, and were not abused in any way. They both wanted to return to their parents' custody.

Cassandra denied ever seeing her parents use drugs despite visiting their home daily. Although Cassandra was 18 at the time of the prior dependency matter, she also denied knowing of their drug use in 2009 and 2010. When Mother moved out during the prior dependency matter, Cassandra helped Father care for the children. Cassandra stated she had no concerns about Mother's drug use when she returned. Cassandra assured DCFS she did not experience any form of abuse or neglect as a child. She told the case social worker that "[t]hey are good parents, they always made sure that we all went to school, we were kind of spoiled."

In interviews with DCFS, Mother's sister and childhood friend both denied knowing about Father's drug use. They admitted they knew of Mother's drug use after the prior dependency matter in 2010, and suspected Mother used methamphetamine at times because her weight would fluctuate and her teeth were in bad condition. However, neither saw Mother use drugs or suspected she used drugs after 2014. Mother's sister was not concerned with the parents' drug use.

DCFS noted the family's strengths were that the children appeared healthy, they did well in school, and they denied ever witnessing any drug use. In addition, Mother and Father appeared committed to complying with all court orders to reunify with the children, and had tested clean in random drug testing in January and February 2017. Nevertheless, DCFS considered the children to be at a "high risk" of future harm due to Mother's and Father's unresolved history of drug use, along with their failure to comply with previous case plan orders, and their failure to complete a drug treatment program.

**B. Adjudication Hearing**

At the contested hearing on March 2, 2017, the juvenile court admitted into evidence DCFS's reports as well as stipulated testimony from Mother and Father. It was stipulated that Mother would testify that she was not currently using or abusing drugs, including methamphetamine, and had tested clean. Father's stipulated testimony was much the same as Mother's. Both Father and Mother were set to begin a drug counseling program on March 14, 2017. Both Mother and Father argued for dismissal on the ground they were drug users, not abusers, and their use had no adverse impact on the children. Counsel for DCFS and the children opposed dismissal of the petition.

The juvenile court found by clear and convincing evidence that substantial danger exists to the physical health of the children and there is no reasonable means to protect them without removal from their parents' custody. Among other things, the juvenile court found that Mother and Father are "recent user[s]" of amphetamine and methamphetamine which "placed the children at risk of harm."

The juvenile court did not believe the parents' argument that the children were doing well despite the parents' drug use. The court found "the only reason why these children are doing fine is because they do have relative support, and they are older." The court reminded Mother, "You failed to reunify with your children the first time around because you did nothing, nothing, to get them back." As to Father, it stated, "You allowed her to get back into your home when she did nothing . . . to reunify with your children." The court ordered reunification services, including participation in drug testing, a drug treatment program, and counseling. Father timely appealed.[2]

---

[2] Mother does not challenge the findings against her and is not a party to this appeal. As a result, there is a justiciability issue since " ' "the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent." ' " (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.) Father, however, contends Mother's issues are "virtually identical" and "intertwined" with his, thus "giving rise to standing for Father to raise those issues that impact on their related interests." (See *In re Patricia E.* (1985) 174 Cal.App.3d 1, 6, disapproved on another ground in *In re Celine R.* (2003) 31 Cal.4th 45, 60.) DCFS does not address the justiciability issue. Because the jurisdictional findings against Father and Mother are essentially the same and serve as the basis for a dispositional order that is also challenged on appeal, we will exercise our discretion to consider Father's claims on the merits. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763 (*Drake M.*); see also *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015; *In re Anthony G.* (2011) 194 Cal.App.4th 1060, 1064–1065.)

## DISCUSSION

Father challenges the trial court's findings for lack of substantial evidence,[3] contending he and Mother did not abuse drugs and their use of methampthamine was not linked to a risk of harm to the children. Father also contends the juvenile court's disposition order removing the children was in error. We find substantial evidence supports the juvenile court's findings and orders.

### A.    Standard of Review

When an appellate court reviews the jurisdictional or dispositional findings of the juvenile court, it looks to see if substantial evidence, whether contradicted or uncontradicted, supports the findings. (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 184; *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.) The appellate court must review the evidence in the light most favorable to the trial court's order, drawing every reasonable inference and resolving all conflicts in favor of the prevailing

---

[3]    Father also argues the allegations sustained in the petition do not support jurisdiction because the juvenile court failed to find there was a substantial risk of "serious physical harm" as required under section 300, subdivision (b)(1). Instead, the juvenile court expressly excised the words "serious" and "physical," finding only that there was a "risk of harm." Father has forfeited this issue for failure to challenge the sufficiency of the dependency petition on its face. (*In re John M.* (2012) 212 Cal.App.4th 1117, 1123; *In re Christopher C.* (2010) 182 Cal.App.4th 73, 82.) In any event, substantial evidence supports a finding there exists a risk of serious physical harm due to the parents' drug abuse. (*In re John M., supra,* 212 Cal.App.4th at p. 1123 [" ' "[I]f the jurisdictional findings are supported by substantial evidence, the adequacy of the petition is irrelevant" [Citation.]' "].)

party.  (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.)
Substantial evidence "means evidence that is 'reasonable,
credible and of solid value; it must actually be substantial proof
of the essentials that the law requires in a particular case.' "
(*In re E.D.* (2013) 217 Cal.App.4th 960, 966.)

Appellant has the burden to show that the evidence was
not sufficient to support the findings and orders.  (*In re Geoffrey
G.* (1979) 98 Cal.App.3d 412, 420.)  The reviewing court may not
reweigh the evidence or express an independent judgment.  (*In re
Stephanie M.* (1994) 7 Cal.4th 295, 318.)  Rather, the reviewing
court must determine whether "a reasonable trier of fact could
have found for the respondent based on the whole record."
(*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th
1627, 1633, italics omitted.)

## B.     The Substance Abuse Finding Was Supported By Substantial Evidence

Father admits he is a "user" of methamphetamine but
contends he is not an "abuser" of it, and thus the court should not
have sustained the petition.  We disagree.

A child may be declared a dependent of the court as a result
of "the inability of the parent . . . to provide regular care for the
child due to the parent's . . . substance abuse."  (§ 300, subd.
(b)(1).)  Substance abuse for purposes of section 300, subdivision
(b), is shown by a diagnosis from a medical professional or by
evidence of criteria recognized by the medical profession as
indicative of a substance abuse disorder.  (*Jennifer A. v. Superior
Court* (2004) 117 Cal.App.4th 1322, 1346; *Drake M., supra,* 211
Cal.App.4th at p. 766.)

11

The court in *Drake M.,* for example, relied on the fourth edition of the Diagnostic & Statistical Manual of Mental Disorders (DSM) to arrive at the criteria which demonstrate substance abuse, including the failure to fulfill major life obligations, recurrent use of drugs in physically hazardous situations, legal problems stemming from drug use, or continued use despite interpersonal or social problems exacerbated by drugs.  (*Drake M., supra*, 211 Cal.App.4th at p. 766.)

In *In re Christopher R.* (2014) 225 Cal.App.4th 1210 (*Christopher R.*), the court relied on the fifth edition of the DSM, which identified 11 criteria for the diagnosis of substance use disorders.  These criteria  include cravings and urges to use the substance; spending a lot of time getting, using, or recovering from use of the substance; giving up important social, occupational or recreational activities because of substance use; and not managing to do what one should at work, home or school because of substance use.  Under this analysis, the presence of two or three of the 11 specified criteria indicates a mild substance use disorder; four or five indicate a moderate substance use disorder; and six or more a severe substance use disorder.  (*Ibid.*)

Under the criteria outlined in *Drake* and *Christopher R.,* substantial evidence supports a finding Father has a methamphetamine abuse disorder.  First, he has cravings and urges to use methamphetamine.  Father admitted to the DCFS investigator he was "addicted" and "could not stop."  Further, he has used methamphetamine continuously for more than 25 years. Father admitted his drug use was a "habit" and he used his toothaches and back pain as an excuse to continue using.  He stated, "I just needed it every day to keep me going because if I would have stopped, I would have been like in a [coma], I would

12

have been sleeping a lot and I couldn't do that because I had to go to work so I kept doing it."

Moreover, the amount of time he spends using methamphetamine has increased dramatically. He reported using it "occasionally" in the beginning. Then he used it every weekend for many years until about three or four years ago, when Mother returned home. After her return, he increased his use to four times a day.

Further, his and Mother's drug use has resulted in recurrent legal problems, namely, the current and prior dependency matters. Even though he received a negative test in 2009, Father admitted he used methamphetamine while the dependency matter was ongoing. He was unable to stop despite fearing that his children would be taken away from him.

To compound the problem, Father denies needing a program to help him and Mother remain drug-free. He believes he can remain clean on his own, despite his long history of addiction. Indeed, Father believes he is "immune to it" because he has used methamphetamine for so long. This is more than sufficient evidence to demonstrate a substance abuse disorder pursuant to section 300, subdivision (b).

Although Mother has not challenged the findings against her, we note that Mother has been diagnosed with a "moderate methamphetamine use disorder" by Dr. Lauren Walton of Kaiser Permanente. This diagnosis alone is sufficient evidence of a drug abuse disorder. Additionally, Mother exhibits all the hallmarks of drug abuse that Father does.

## C. The Finding of Risk of Serious Physical Harm Was Supported By Substantial Evidence

According to Father, there is no risk of serious physical harm to the children from his methamphetamine abuse because they are doing well.  Substantial evidence suggests otherwise.

There are three elements for jurisdiction under subdivision (b) of section 300: (1) neglectful conduct or substance abuse by a parent in one of the specified forms, (2) causation, and (3) serious physical harm to the child, or a substantial risk of such harm. (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 724–725.)  The third element "effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur)." (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396.)  Thus, the juvenile court is not required to "wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child." (*Christopher R., supra,* 225 Cal.App.4th at p. 1216.)

In *In re Rocco M.* (1991) 1 Cal.App.4th 814 (*Rocco M.*)*,* the court found a substantial risk of serious physical harm to an 11-year-old child because his mother created the danger that he would ingest hazardous drugs.  (*Id.* at p. 825.)  The court explained, "By placing drugs under his nose, setting the wrong example, and leaving him entirely to his own devices over prolonged periods of time, [the mother] certainly subjected him to a substantial risk that he would eventually succumb" to the temptation to take drugs himself.  (*Id.* at p. 826.)  In particular, the mother exposed the child to her own drug use, "thus impliedly approving such conduct and even encouraging him to believe that

14

it is an appropriate or necessary means of coping with life's difficulties." (*Id.* at p. 825.) The *Rocco M.* court emphasized its conclusion was based not on the mother's "apparent dependency on drugs or alcohol, but on her creation of a home environment providing Rocco with the means, the opportunity, and at least the potential motives to begin abusing drugs himself." (*Id.* at p. 826.)

As in *Rocco M.,* Father's tolerance of drug use and denial of his drug problem sets the wrong example for Catrina and Alexzander. Father has been addicted to methamphetamine— "an inherently dangerous drug known to cause visual and auditory hallucinations, sleep deprivation, intense anger, volatile mood swings, agitation, paranoia, impulsivity, and depression"— for over 25 years. Father's drug use has increased dramatically in recent years.

Although he claimed he took it for back pain, he later acknowledged that was an "excuse" and he was unwilling to simply ask for pain medication from a doctor. Despite these admissions, Father denies his methamphetamine use has resulted in any problems for him or for his children. He also denies needing help to resolve a 25-year long drug habit.

Although the children claim they did not know their parents were using methamphetamine, they were certainly aware of it by the time of the adjudication hearing. Despite knowing of the dangers of drug use from school, Alexzander was not worried about his parents' drug use. Instead, Alexzander believed they would simply stop taking drugs and go to classes. This supports an inference that 14-year-old Alexzander has assimilated Father's attitude that his drug addiction is not a problem and can easily be addressed. As in *Rocco M.*, Father's emphasis on how his drug use helped him do his job and deal

15

with back pain could send a message to the children that daily use of methamphetamine is an appropriate means of coping with life's difficulties.

Additionally, Mother's and Father's conduct provided the children with the opportunity and means to begin experimenting with drugs themselves. Father was at work all day, allowing Mother to care for the children. He admits she "would sleep a lot sometimes[,]" thus leaving the children unsupervised.

It is reasonable to conclude that the children had access to the methamphetamine used by Father and Mother. Mother and Father ingested methamphetamine multiple times a day in the house, which leads to the obvious inference that methamphetamine can be found in the house. There is no evidence of where Mother stored her supply of methamphetamine, but Father stated he kept his in his wallet. Although he claimed he had the wallet with him at all times, he admitted he was asleep while it was in his pocket or underneath a cushion in the couch. That is sufficient to provide access for an enterprising 14 year old or an 11 year old.

Here, Father sent the message that methamphetamine use did not present a problem and he provided opportunity and access to the drug. Under *Rocco M.*, this is sufficient evidence to establish a substantial risk of serious physical harm to the children.

Father contends there is no link between his drug use and a risk of harm to the children. Father focuses on the fact that the children do well in school and have adequate shelter, food, and clothing. However, the juvenile court disbelieved the children's safety and success was a result of Mother's and Father's parenting. The court instead found "the only reason why these

children are doing fine is because they do have relative support, and they are older."

Substantial evidence supports the trial court's finding: the children are 14 and 11 years old. Moreover, Cassandra, who is a preschool teacher, reported she was at Mother and Father's house daily. She also helped Father care for the children while Mother lived in Ontario. On the other hand, Father allowed Mother to return home knowing she had not resolved her drug habit. Indeed, Father knew Mother used methamphetamine two or three times a day, yet allowed her to drive the children to and from school. It is reasonable to infer from these facts that Cassandra, and not Father or Mother, provided the children with the safe and healthy environment leading to their success.

In any event, we do not reweigh the evidence or overturn a lower court's finding that was based on substantial evidence. (See *Drake M., supra*, 211 Cal.App.4th at p. 766 ["the trial court is in the best position to determine the degree to which a child is at risk based on an assessment of all the relevant factors in each case"].) Even if we find Father and Mother provided a safe and healthy home environment, that does not negate the substantial evidence of a risk of harm to them from the parents' abuse of methamphetamine.

Finally, Father argues that a risk of serious physical harm cannot be presumed solely because he abuses methamphetamine, relying on *In re Rebecca C., supra,* 228 Cal.App.4th 720 and *Drake M., supra,* 211 Cal.App.4th 754. We agree that Father's use of methamphetamine, without more, cannot bring the children within the jurisdiction of the dependency court. However, we have set out in detail the "more" that supports the

court's finding that his methamphetamine use presents a substantial risk of serious physical harm to the children.

**D. The Removal Order Was Supported By Substantial Evidence**

Father next contends the juvenile court lacked authority to remove the children from his and Mother's custody. We reject this argument for the same reasons we find substantial evidence supports the jurisdictional findings above.

At the adjudication hearing, the juvenile court found by clear and convincing evidence that substantial danger exists to the physical health of the children and there is no reasonable means to protect them without removal from their parents' custody. This finding comports with section 361, which prohibits the removal of a child from his parents' physical custody unless the juvenile finds by clear and convincing evidence "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361, subd. (c)(1).)

"A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. [Citation.] 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.] The court may consider a parent's past conduct as well as present circumstances. [Citation.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 169–170.)

18

We review a removal order for substantial evidence notwithstanding the clear and convincing standard used by the juvenile court. (*In re Kristin H.*, *supra,* 46 Cal.App.4th at p. 1654.) "Thus, on appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' [Citation.]" (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 881–882.)

Substantial evidence supports the juvenile court's finding that it was necessary to remove the children from Mother's and Father's custody to protect them from a substantial danger to their physical health, safety, or protection. In addition to the evidence supporting the jurisdictional finding of risk of harm, discussed extensively above, neither Mother nor Father had begun a treatment program at the time of the disposition hearing. Moreover, Mother had previously failed to comply with the court's orders and Father had allowed Mother to return home knowing she had not addressed her drug problems. Thus, the danger to the children was ongoing until Father and Mother fulfilled the court's reunification orders.

Father contends the alternative to removal is to allow the children to remain with Father and Mother. In support of this contention, Father repeats his argument that he and Mother had provided a safe and healthy home for the children and would continue to do so. As discussed above, the juvenile court disbelieved that the children's home life and success at school was a result of Father's and Mother's efforts. Instead, substantial evidence supports a finding that there existed a

danger to the children's physical health or safety.  Allowing the children to remain in the home was not a viable alternative to removal.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.


                                    BIGELOW, P.J.

We concur:


        RUBIN, J.


        FLIER, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re ALEXZANDER C. et al., Persons Coming Under the Juvenile Court Law. | B282183 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RICHARD C., <br><br> Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK81787) |

THE COURT*:

The opinion in the above entitled matter filed on November 29, 2017, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

\* BIGELOW, P. J.          RUBIN, J.          FLIER, J.

1