Filed 6/29/23  In re S.D. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.D. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>L.D. et al.,<br><br>Defendants and Appellants. | F085491<br><br>(Super. Ct. Nos. JVDP-22-000048, JVDP-22-000049, JVDP-22-000050, JVDP-22-000051, JVDP-22-000052, JVDP-22-000053, JVDP-22-000054)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from orders of the Superior Court of Stanislaus County.  Annette Rees, Judge.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant, L.D.

S. Lynne Klein, under appointment by the Court of Appeal, for Defendant and Appellant, Robert D.

Thomas E. Boze, County Counsel, and Sophia Ahmad, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Franson, J. and Snauffer, J.

Appellants Robert D. (father) and L.D. (mother) are the parents of S.D., Br.D., G.D., Sa.D., Ba.D., C.D., and R.D. (collectively, the children), who are the subjects of a dependency case. Both parents challenge the juvenile court's orders issued at a Welfare and Institutions Code section 366.26[1] hearing that resulted in their parental rights being terminated. Mother and father contend the juvenile court and Stanislaus County Community Services Agency (agency) failed to comply with their duty of further inquiry under the Indian Child Welfare Act (ICWA).[2] We conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings to ensure ICWA compliance, but otherwise affirm the juvenile court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In March 2022, the agency filed a petition alleging the children were described by section 300, subdivisions (b)(1) and (c). The allegations involved substance abuse by the parents, domestic violence between the parents, an unsanitary home, inappropriate discipline, and withholding food and medical treatment from the children. Mother informed the social worker that she had possible Cherokee ancestry, and father reported possible Cherokee and Blackfeet ancestry. The agency filed parental notification of Indian status (ICWA-020) forms on behalf of the parents indicating they were or may be members of the Cherokee and Blackfeet tribes.[4] The agency's detention report indicated

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3] The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

[4] There is some confusion in the record as to mother's initial reports of possible Indian ancestry. According to the detention report, mother initially reported only Cherokee ancestry. However, the ICWA-020 forms filed by the agency included notations claiming Blackfeet ancestry for mother, and the social worker later reported in court "[mother] reported Blackfeet" ancestry.

2.

ICWA may apply based upon the parents' reporting of Indian ancestry. The social worker contacted a maternal uncle and maternal grandmother, but the agency's report did not document any inquiry of those relatives regarding possible Indian ancestry.

At the detention hearing held on March 8, 2022, mother and father were both present and confirmed their reporting of Indian ancestry. The children were detained from the custody of their parents. On April 14, 2022, the agency filed an amended petition containing additional allegations pursuant to section 300, subdivisions (a), (g), (i), and (j). The agency's jurisdiction and disposition report recommended that both parents be denied family reunification services pursuant to section 361.5, subdivisions (b)(6) and (e)(1). The children occasionally visited with their maternal grandmother and maternal uncle during sibling visits. The agency's report contained no interviews of the maternal uncle and maternal grandmother regarding mother's claim of Indian ancestry.

On April 20, 2022, the agency sent formal notice pursuant to ICWA to the Bureau of Indian Affairs (BIA), Cherokee Nation of Oklahoma, Eastern Band of Cherokee Indians, United Keetowah Band of Cherokee Indians, and the Blackfeet Tribe. On May 13, 2022, the agency filed a motion to determine ICWA was not applicable based on responses from the tribes indicating the children were not enrolled or eligible for enrollment in the tribes. On May 17, 2022, the juvenile court found ICWA was not applicable without addressing the absence of documentation regarding the agency's inquiry of extended family members.

The juvenile court sustained the allegations of the amended petition at the jurisdictional hearing on June 15, 2022. At the disposition hearing held on July 20, 2022, the juvenile court denied family reunification services to both parents pursuant to section 361.5, subdivisions (b)(6) and (e)(1) and set a section 366.26 hearing for November 9, 2022. The agency's section 366.26 report, filed on October 27, 2022, recommended that the juvenile court terminate the parental rights of mother and father

3.

and order a permanent plan of adoption for the children. The report detailed the previous ICWA finding without additional information or inquiries of available extended family members. The children were split into three different adoptive homes that were each committed to providing a permanent plan of adoption for the children in their care.

Mother and father were both present for the contested section 366.26 hearing held on December 20, 2022. The juvenile court followed the agency's recommendation and terminated the parental rights of mother and father and selected a plan of adoption. After the hearing, the juvenile court addressed ICWA inquiry regarding the children's infant sibling as part of the sibling's disposition hearing.[5] The juvenile court questioned the social worker about a conversation between the social worker and maternal grandmother. The maternal grandmother confirmed that the family had Cherokee ancestry, but she did not have any knowledge about mother's claim of Blackfeet ancestry. The social worker also reported his attempts to contact extended family members in the infant sibling's case, which were unsuccessful.

## DISCUSSION

Mother and father both contend there were various extended family members, specifically the maternal grandmother and maternal uncle, the agency could have interviewed regarding the children's Indian ancestry but did not. Therefore, they argue, the agency failed to fulfill its duty of further inquiry under ICWA and the juvenile court erred in finding ICWA did not apply. We concur.

### A. Applicable Law

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1

---

[5]    We grant the agency's April 3, 2023 request for judicial notice of the proceedings in the infant sibling's dependency case.

4.

Cal.5th 1, 7–8.)  In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)).  An " 'Indian child' " is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe.  (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the agency and the juvenile court have an "affirmative and continuing duty to inquire whether a child is or may be an Indian child .…"  (Cal. Rules of Court, rule 5.481(a); see § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.)  The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice."  (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child."  (§ 224.2, subd. (a).)  Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b), 306, subd. (b).)  The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child."  (§ 224.2, subd. (c).)  The court must also require each parent to complete form ICWA-020.  (Cal. Rules of Court, rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the agency or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient

information to determine that there is reason to know that the child is an Indian child."
(§ 224.2, subd. (e).) As recently clarified by the Legislature, a "reason to believe" exists
when the juvenile court or agency "has information suggesting that either the parent of
the child or the child is a member or may be eligible for membership in an Indian tribe."
(*Id.*, subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the
agency "shall make further inquiry regarding the possible Indian status of the child, and
shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) Further inquiry
includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended
family members," and contacting the [BIA], the State Department of Social Services, and
the tribes and any other person who may have information. (§ 224.2, subd. (e)(2)(A)–
(C).)

The final duty component arises when the court or agency has " 'reason to
know' " the child is an Indian child. (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.)
A "reason to know" exists if one of the following circumstances is present: "(1) A person
having an interest in the child … informs the court that the child is an Indian child[;] [¶]
(2) The residence … of the child [or] the child's parents … is on a reservation or in an
Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court
that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The
child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The
court is informed that the child is or has been a ward of a tribal court[; or] [¶] (6) The
court is informed that either parent or the child possess[es] an identification card
indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)–(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and
due diligence have been conducted and there is no reason to know whether the child is an
Indian child, the court may make a finding that the ICWA does not apply, subject to
reversal if the court subsequently receives information providing reason to believe the

6.

child is an Indian child. If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry. (§ 224.2, subd. (i)(2).)

## B. *Standard of Review*

Where the juvenile court finds ICWA does not apply to a child after completion of an initial inquiry, "[t]he finding implies that … social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) We review the court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) We must uphold the juvenile court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.) The appellant "has the burden to show that the evidence was not sufficient to support the findings and orders." (*Ibid*.)

## C. *Analysis*

Pursuant to its duty under section 224.2, the juvenile court asked each parent whether they had any Indian heritage at the detention hearing held on March 8, 2022. Both parents claimed Indian ancestry, and the juvenile court found ICWA was not applicable after the agency sent formal notice to the appropriate tribes. The duty of inquiry, however, did not end with providing the tribes with information it obtained from the parents. The agency was also required under section 224.2, subdivision (b) to ask extended family members. Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

There were at least two extended family members, a maternal uncle and maternal grandmother, who were in contact with the agency from the outset of the proceedings. The agency either failed to ask these extended family members about Indian ancestry or did not document their inquiries. The only information related to the inquiry of extended

7.

family members was provided informally by the social worker after the juvenile court made its final ICWA finding in the present case.

Under the circumstances, we conclude the agency did not fulfill its statutory duty of inquiry. (§ 224.2, subd. (b).) As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the agency conducted an adequate, proper, and duly diligent inquiry, and its contrary conclusion was an abuse of discretion. Because the failure in this case concerned the agency's duty of initial inquiry, only state law is involved. "Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial. (Cal. Const., art. VI, § 13 ['No judgment shall be set aside … unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice'].)" (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*In re K.H.* (2022) 84 Cal.App.5th 566, 606–607 (*K.H.*).)

However, in *In re A.R.* (2021) 11 Cal.5th 234, the Supreme Court "recognized that while we generally apply a *Watson*[6] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

---

**6**      *People v. Watson* (1956) 46 Cal.2d 818, 820.

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ....' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.)  "ICWA is not directed at reaching, or protecting, a specific outcome on the merits."  (*Id*. at p. 609.)  Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest."  (*Id*., at p. 608.)  Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal."  (*Ibid*.)  Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the agency, or the juvenile court.  (*Id*., at p. 596.)

"[I]f the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously."  (*K.H.*, *supra*, 84 Cal.App.5th at p. 609.)  Thus, "the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child[, under a standard *Watson* analysis].  The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination.  It necessarily follows that [in the context of ICWA and consistent with *In re A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply.  Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this step is critical if the rights of tribes under ICWA and California law are to be meaningfully safeguarded, as was intended by Congress and our state Legislature."  (*K.H.*, at p. 591.)

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610.) Here, the agency's inquiry, limited only to mother and father, "fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law." (*Id*. at p. 620.) "Where a record is silent or nearly silent with respect to an ICWA inquiry at the first step, a finding of harmlessness necessarily rests on speculation" and "is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes." (*Id*. at p. 611.) Therefore, the error is prejudicial.

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the agency to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and California Rules of Court, rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA finding. In all other respects, the court's orders terminating the parents' parental rights are affirmed.