Filed 7/10/23  In re Daniel M. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re DANIEL M., a Person Coming Under the Juvenile Court Law. | B317769 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. CARLOS M., Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18LJJP00544E) |

APPEALS from orders of the Superior Court of Los Angeles County, Donald A. Buddle, Judge.  Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane E. Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Carlos M., father of nine-year-old Daniel M., appeals from the juvenile court's disposition orders removing Daniel from his care. Carlos contends his longstanding methamphetamine abuse, which included using the drug while caring for Daniel, did not support the court's removal orders. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Daniel Is the Subject of Several Prior Dependency Proceedings*

Carlos and Karina U., Daniel's mother, have a history of domestic violence that has resulted in several investigations and petitions by the Los Angeles County Department of Children and Family Services. In 2014 the Department received a referral stating Carlos was arrested for shoving and slapping Karina during an argument. In 2016 the Department received a referral stating Carlos was arrested for dragging Karina out of their house and throwing her belongings on the porch. In February 2017 the Department received another referral, this one stating that Carlos, after Karina accused him of using drugs in front of Daniel, hit Karina in the face and arms and kicked her in the legs. Daniel was present during the latter incident.

A few weeks after the February 2017 incident, the Department received a referral stating Carlos had been arrested

2

for spousal abuse after another domestic violence incident. This time, Carlos hit Karina in the head with a rubber dumbbell while they were arguing again about his drug use, got on top of her after she fell, and grabbed her jaw. Daniel was present for this incident too. The Department filed a petition under Welfare and Institutions Code section 300, subdivision (b),[1] alleging Carlos and Karina's history of domestic violence, as well as Carlos's use of ketamine, methamphetamine, and cannabis, placed Daniel at a substantial risk of serious physical harm. The juvenile court sustained the petition, declared Daniel a dependent child of the court, and removed Daniel from Carlos. The court terminated its jurisdiction in February 2018 and, after finding Carlos had failed to substantially complete domestic violence and other court-ordered programs and had failed to submit to court-ordered drug testing, granted Karina sole legal and physical custody of Daniel.

A few months later, however, Karina tested positive for methamphetamine while giving birth to another child. The Department filed a new petition under section 300, subdivision (b), which the juvenile court sustained. The court terminated its jurisdiction in February 2021, this time granting Karina and Carlos joint legal and physical custody of Daniel.

Once again, however, only a few months elapsed before the Department filed a new petition. In August 2021 the Department filed a petition under section 300, subdivision (b), alleging there had been new incidents of domestic violence between Karina and Carlos (Karina had gone to Carlos's home and hit him in the face) and between Karina and her new partner. The court sustained the petition and ultimately granted

---

[1]     Statutory references are to this code.

3

Carlos and Karina joint legal, and Carlos sole physical, custody of Daniel.

B.    *The Juvenile Court Sustains the Current Petition*

In November 2021, just a few weeks after the most recent order terminating juvenile court jurisdiction, the Department filed the petition in this proceeding, alleging there had been yet another physical altercation between Karina and Carlos.  This time Karina forced her way into Carlos's home, grabbed him, and scratched his face; Carlos pushed Karina in the face, causing her to fall and her nose to bleed.  Karina and Carlos were both arrested for domestic battery and for violating a criminal protective order.  The Department alleged under section 300, subdivision (b), the recent incident and history of domestic violence between Karina and Carlos placed Daniel at a substantial risk of serious physical harm.

Two days after filing the petition, the Department received a referral stating Karina had again attacked Carlos.  In this incident Karina had followed Carlos in her car while Carlos was driving his car with Daniel in the back seat.  When Carlos stopped, Karina got out of her car and hit Carlos in the head several times through his car window.  The juvenile court sustained the petition against both Karina and Carlos, declared Daniel a dependent child of the court, removed Daniel from

4

Karina, placed Daniel with Carlos, and ordered family preservation services for Carlos.

### C. *After Carlos Admits to Abusing Methamphetamine, the Juvenile Court Sustains a Subsequent Petition and Removes Daniel from Carlos*

A few days after the combined jurisdiction and disposition hearing, Carlos reported to law enforcement that Karina had kidnapped Daniel. Investigators ultimately learned, however, that Daniel's maternal grandmother and uncle (Karina's mother and brother) had picked up Daniel from Carlos's house that morning for a scheduled visit with Karina and that Carlos had brought Daniel to their car. Carlos admitted to law enforcement he was high on methamphetamine and had been using the drug daily, at which point he was arrested for child abuse. When a case social worker interviewed Carlos, Carlos admitted that he smoked methamphetamine every 30 minutes the day he (falsely) reported the kidnapping and that he used methamphetamine when Daniel was asleep or at school.

The Department filed a subsequent petition under section 342, alleging Carlos had a history of drug abuse and was a current methamphetamine abuser, which placed Daniel at a substantial risk of serious physical harm. At the jurisdiction and disposition hearing, the juvenile court removed Daniel from Carlos, placed Daniel under the care and supervision of the Department for suitable placement, and ordered separate

monitored visits for Carlos and Karina.[2]  Carlos appealed from
the disposition order.[3]

## DISCUSSION

A.    *Applicable Law and Standard of Review*

The juvenile court may remove a dependent child from the
physical custody of the child's parents if "the juvenile court finds
clear and convincing evidence" that one of the grounds listed in
section 361, subdivision (c), applies.  (*In re V.L.* (2020)
54 Cal.App.5th 147, 154; see *In re Ma.V.* (2021) 64 Cal.App.5th
11, 24 [the "'heightened burden of proof [for removal] is
appropriate in light of the constitutionally protected rights of
parents to the care, custody and management of the children.'"].)
One ground for removal is that "there is or would be a substantial
danger to the physical health, safety, protection, or physical or
emotional well-being of the minor if the minor were returned
home, and there are no reasonable means by which the minor's
physical health can be protected without removing the minor"
from his or her parents.  (§ 361, subd. (c)(1); see *In re L.O.* (2021)
67 Cal.App.5th 227, 244; *In re I.R.* (2021) 61 Cal.App.5th 510,
520; *In re D.P.* (2020) 44 Cal.App.5th 1058, 1065.)  The juvenile
court must also determine "whether reasonable efforts were made

---

[2]    The Department placed Daniel with his maternal aunt.

[3]    Carlos also filed a notice of appeal from the court's initial
jurisdiction findings and disposition order.  We consolidated the
appeals.  In his briefing Carlos does not challenge the original
jurisdiction findings or any other portion of the original
disposition order.

to prevent or to eliminate the need for removal of the minor from his or her home" and must "state the facts on which the decision to remove the minor is based." (§ 361, subd. (e); see *L.O.*, at p. 247; *D.P.*, at p. 1065.) "But ""[t]he parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.""" (*L.O.*, at p. 245; see *In re K.B.* (2021) 59 Cal.App.5th 593, 605; *In re D.B.* (2018) 26 Cal.App.5th 320, 328.) "A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent." (*In re D.D.* (2019) 32 Cal.App.5th 985, 996; see *In re Alexzander C.* (2017) 18 Cal.App.5th 438, 451, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7; *In re N.M.* (2011) 197 Cal.App.4th 159, 169-170.)

"We review a dispositional order removing a child from a parent for substantial evidence, 'keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence.'" (*In re M.V.* (2022) 78 Cal.App.5th 944, 960; see *In re L.O.*, *supra*, 67 Cal.App.5th at p. 245; *In re I.R.*, *supra*, 61 Cal.App.5th at p. 520; *In re Nathan E.* (2021) 61 Cal.App.5th 114, 123.) "In applying this standard of review, 'the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable'" the facts supporting removal were true. (*M.V.*, at p. 960; see *Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 995-996.) "Consistent with well-established principles governing review for sufficiency of the evidence, in making this assessment the appellate court must view the record in the light most favorable

7

to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*O.B.*, at p. 996; see *M.V.*, at p. 960; *Nathan E.*, at pp. 122-123.)

      B.     *Substantial Evidence Supported the Juvenile Court's Order Removing Daniel from Carlos*

The juvenile court found the facts requiring removal were the same "facts found true in the sustained [section 342] petition"; namely, Carlos had a history of substance abuse, currently abused methamphetamine, and used methamphetamine while caring for Daniel. Substantial evidence supported the court's findings that, because of Carlos's drug use, there was a substantial risk of danger to Daniel if the court returned him to Carlos and that there were no reasonable means to protect Daniel other than removal. Not only did Carlos admit he had used methamphetamine for years, he also admitted he used methamphetamine while caring for Daniel. (See *In re K.B.*, *supra*, 59 Cal.App.5th at pp. 604, 606 [substantial evidence supported removal where the father had a "substantial history with methamphetamine, cocaine, and marijuana" and was not forthcoming about his current drug use]; *In re E.E.* (2020) 49 Cal.App.5th 195, 216 [substantial evidence supported removal where the evidence showed the father "would not protect his children from mother's drug problem, and possibly had a drug problem of his own"]; *In re Alexzander C.*, *supra*, 18 Cal.App.5th at p. 450 [because the mother and father "ingested methamphetamine multiple times a day in the house," it was "reasonable to conclude that the children had access to the drug,"

8

which created a substantial risk of serious physical harm to the children].)

Moreover, Carlos's methamphetamine use had already negatively impacted Daniel. The conflict between Carlos and Karina about his drug use was the catalyst for (at least) two serious domestic violence incidents where Daniel was present. (See *In re Nathan E.*, *supra*, 61 Cal.App.5th at p. 124 [substantial evidence supported removal where the mother failed "over the course of many years" to refrain from domestic violence in the children's presence]; *In re V.L.*, *supra*, 54 Cal.App.5th at pp. 156-157 [substantial evidence supported removal where the parents engaged in multiple domestic violence incidents in the presence of the children because, "[e]ven if a child suffers no physical harm due to domestic violence, a 'cycle of violence between . . . parents constitute[s] a failure to protect [a child] "from the substantial risk of encountering the violence and suffering serious physical harm or illness from it"'"].) Karina also reported that Daniel found a syringe at Carlos's house, which supported a reasonable inference Daniel was exposed to Carlos's drug use. (See *In re Lana S.* (2012) 207 Cal.App.4th 94, 106 [substantial evidence supported removal where "drug paraphernalia was found within the reach of the children"].)

The evidence also showed Carlos's methamphetamine use negatively affected his ability to care for Daniel. While high on methamphetamine, Carlos called law enforcement to report Daniel had been kidnapped, even though Daniel had not been kidnapped and instead had been given by Carlos to relatives for a scheduled visit. (See *In re Alexzander C.*, *supra*, 18 Cal.App.5th at p. 449 [methamphetamine is "'an inherently dangerous drug known to cause visual and auditory hallucinations, sleep

9

deprivation, intense anger, volatile mood swings, agitation, paranoia, impulsivity, and depression'"].) And Karina reported to a Department social worker that Carlos was acting "weird," "sleeping a lot" and "very forgetful," which further suggested he could not adequately care for a child as young as Daniel. (See *ibid.* [substantial evidence supported removal where the father admitted that, because of her drug use, the mother "'would sleep a lot sometimes', thus leaving the children unsupervised"].)

Carlos argues substantial evidence did not support removal because he "took good care of Daniel." While the record contains some facts from which the court may have been able to infer Carlos at times provided adequate care for Daniel—for example, a case social worker reported that Daniel was well-dressed and well-fed—we review the record in the light most favorable to the juvenile court's findings, not in the light most favorable to Carlos's claims. While Daniel may not yet have suffered serious injury because of Carlos's methamphetamine abuse, the court could reasonably infer Daniel was at substantial risk of danger, given Carlos's long history of drug use (including while caring for Daniel) and related incidents of failing to care for Daniel. (See *In re L.O.*, *supra*, 67 Cal.App.5th at p. 245 ["""the minor need not have been actually harmed before removal is appropriate,"""" and the """court may consider a parent's past conduct as well as present circumstances"""]; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1384 ["that [the child] has not yet been harmed by such [drug] use, without more, is not determinative"].)

Carlos also contends there were alternatives to removing Daniel, including court-ordered substance abuse treatment and drug testing. These may have been possible alternatives, but

they were alternatives that had already failed. This was not the first time the juvenile court declared Daniel a dependent child because of Carlos's drug use. During the first dependency proceeding, the court ordered Carlos to participate in parenting classes, individual counseling, and random drug testing. Carlos did not comply with those orders. Carlos also told a social worker for the Department that he had completed drug treatment programs in the past. (See *In re E.E.*, *supra*, 49 Cal.App.5th at p. 217 [substantial evidence supported removal where, "on the whole, [the parents'] resistant behavior and lack of progress in services reflect a desire to avoid investigation into the extent of their drug use and a lack of insight into the serious problems parental drug use poses"]; *In re Lana S.*, *supra*, 207 Cal.App.4th at pp. 105-106 [juvenile court "could reasonably determine there was no alternative to removal," given the mother's "lengthy history of drug abuse, denial of any drug problem, [and] refusal to voluntarily drug test and enter drug treatment"]; *In re J.C.* (2014) 233 Cal.App.4th 1, 6-7 [substantial evidence supported removal where the father had "years-long struggles with drug abuse" and "was prone to relapses," even after entering a drug treatment program]; *Laura B. v. Superior Court* (1998) 68 Cal.App.4th 776, 780 [where the parent exhibited a "clear demonstration of a determination to maintain a drug habit," the juvenile court "reasonably interpreted [the behavior] as resistance to treatment"].) And Carlos admitted to the social worker that he had been using methamphetamine at least on and off since he was in the eighth grade and that he continued to do so after the Department first initiated dependency proceedings in 2017. (See *In re T.V.* (2013) 217 Cal.App.4th 126, 133 ["[a] parent's past conduct is a good predictor of future behavior"].)

11

Substantial evidence supported the trial court's finding that requiring Carlos to participate in court-ordered programs was not a reasonable alternative to removal.

## DISPOSITION

The juvenile court's jurisdiction findings and disposition orders are affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.