Filed 2/21/24  In re M.W. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.W., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.W.,<br><br>Defendant and Appellant. | F086775<br><br>(Super. Ct. No. JD142786-00)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Jennifer E. Feige, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P. J., Snauffer, J., and DeSantos, J.

Appellant C.W. (father) is the father of seven-year-old M.W. (the child), who is the subject of this dependency case. Father challenges the juvenile court's order issued at a Welfare and Institutions Code section 366.26[1] hearing that resulted in his parental rights being terminated. Father contends the court and the Kern County Department of Human Services (department) failed to comply with their duty of inquiry under the Indian Child Welfare Act (ICWA). The department concedes that it failed to conduct an adequate inquiry into the potential Indian ancestry of the child, and it does not oppose remand for the limited purpose of conducting further ICWA inquiry.[2] We agree with the parties and conditionally reverse the court's order terminating parental rights and remand for proceedings to ensure ICWA compliance.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

In December 2021, the department filed a juvenile dependency petition alleging the child was described by section 300, subdivision (b)(1). The allegations involved hazardous conditions in the child's home. The Indian Child Inquiry Attachment (ICWA-010(A)) form indicated the department asked father and the child's mother, L.F. (mother), about the child's Indian status, and the parents gave the department no reason to believe the child is or may be an Indian child.

At the initial detention hearing held on December 6, 2021, father and mother were present and appointed counsel. The juvenile court inquired of mother regarding potential Indian ancestry, and mother disclosed Cherokee ancestry through the child's maternal grandmother. Mother completed a Parental Notification of Indian Status (ICWA-020)

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[3]     The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

2.

form, which reflected her claim of Cherokee ancestry, and the form listed the name and phone number for the maternal grandmother.

Father indicated that his grandmother previously told him that he was "half Sioux," but there were no living family members who could provide additional information. He was able to provide his grandmother's name and state of residence, but he did not know any other details regarding his ancestry. The juvenile court made temporary findings to detain the child, reserved its ICWA finding, and continued the hearing for one day at the request of the parents. On December 7, 2021, the child was detained from mother and father's custody and a combined jurisdiction and disposition hearing was set for January 19, 2022.

The department's jurisdiction report recommended that the allegations in the petition be found true. The disposition report recommended that the child remain in out-of-home care and family reunification services be provided to mother and father. The child's maternal uncle contacted the department on December 22, 2021, to request placement of the child. The social worker provided the maternal uncle with information on the resource family approval process, but there is no indication that he was asked about the maternal family's Indian ancestry.

The ICWA status section of the report documented the department paralegal's efforts to carry out an ICWA inquiry into possible Indian ancestry. Mother informed the paralegal that the maternal grandmother was "full Cherokee," but she denied that any of her family members were enrolled in a tribe. Father reiterated his claim of ancestry with the Sioux tribe through his mother's family. The child's adult sibling was also present during the paralegal's interview of the parents, and she indicated that she had no additional information to provide.

The initial jurisdiction and disposition hearing was continued to March 2, 2022, at mother's request. On January 26, 2022, the department sent the information it gathered in a notice to the Cherokee tribes, Sioux tribes, Bureau of Indian Affairs (BIA), and Secretary of the Interior. On January 28, 2022, a family finding social worker was able

3.

to identify 16 maternal relatives and 20 paternal relatives, and letters were sent to 15 of the relatives regarding civil rights and relative placement consideration. In February and March 2022, the department filed responses from multiple tribes indicating that the child was not enrolled or eligible for enrollment in their tribes.

At the jurisdiction and disposition hearing held on March 30, 2022, the juvenile court found the allegations in the petition true, ordered family reunification services for mother and father, and determined ICWA was not applicable. A six-month review hearing was set for June 27, 2022.

The department's report for the six-month review hearing recommended that family reunification services be continued for mother and father. At a continued six-month review hearing held on September 30, 2022, the juvenile court continued family reunification services and set a 12-month review hearing for February 2, 2023. At the 12-month review hearing, the court terminated family reunification services for mother and father, and a section 366.26 hearing was set for June 2, 2023.

The department's section 366.26 report, dated May 24, 2023, recommended that the juvenile court terminate the parental rights of mother and father and order a permanent plan of adoption for the child. The child was placed in a resource family home, and the care providers were committed to providing a plan of adoption for the child. A supplemental report indicated that there were only four tribes that had not responded to its ICWA inquiry as of July 28, 2023. At a continued section 366.26 hearing held on August 2, 2023, the court terminated the parental rights of mother and father and selected a plan of adoption.

## DISCUSSION

Father contends the juvenile court and department failed to adequately discharge their duty of initial inquiry by failing to inquire of the child's maternal grandmother and maternal uncle regarding possible Indian ancestry. The department concedes this point, and we accept its concession.

4.

*Applicable Law*

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)). An " 'Indian child' " is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4), (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the department and the juvenile court have an "affirmative and continuing duty to inquire whether a child is or may be an Indian child .…" (Cal. Rules of Court, rule 5.481(a);[4] see § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.) The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2, subd. (a).) Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child.

---

**4** All further references to rules are to the California Rules of Court.

5.

(§§ 224.2, subd. (b), 306, subd. (b).) The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) The court must also require each parent to complete a Parental Notification of Indian Status (ICWA-020) form. (Rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the department or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child .…" (§ 224.2, subd. (e).) As recently clarified by the Legislature, a "reason to believe" exists when the court or department "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting the BIA, the State Department of Social Services, and the tribes and any other person who may have information. (§ 224.2, subd. (e)(2)(A)– (C).)

The final duty component arises when the court or department has " 'reason to know' " the child is an Indian child. (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.) A "reason to know" exists if one of the following circumstances is present: "(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; or] [¶] (6) The

court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe."  (§ 224.2, subd. (d)(1)–(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an Indian child.  If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry.  (§ 224.2, subd. (i)(2).)

### A.  *Standard of Review*

Where the juvenile court finds ICWA does not apply to children after completion of an initial inquiry, "[t]he finding implies that … social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry."  (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.)  We review the court's ICWA findings for substantial evidence.  (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.)  We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.  (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.)  The appellant "has the burden to show that the evidence was not sufficient to support the findings and orders."  (*Ibid*.)

### B.  *Analysis*

Pursuant to its duty under section 224.2, the department asked each parent whether they had any Indian heritage.  The child's mother and father both claimed Indian ancestry.  Mother provided the name and contact information for the maternal grandmother, who was identified as the source of her Cherokee ancestry.  However, there is no indication that the department attempted to contact the maternal grandmother about the child's possible Indian ancestry.  In addition, the child's maternal uncle expressed interest in having placement of the child at the outset of the proceedings, but there was no documentation of an inquiry being directed toward him.  Based upon this information, the

7.

juvenile court found ICWA was not applicable.  However, the department was required under section 224.2, subdivision (b) to ask available extended family members about the child's possible Indian ancestry.

Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins.  (25 U.S.C. § 1903(2); § 224.1, subd. (c).)  There was at least one additional extended family member, the maternal uncle, who was in contact with the department during the proceedings.  The department either failed to ask the maternal uncle about Indian ancestry or did not document it.  Furthermore, there was no evidence that the department attempted to contact the maternal grandmother despite having knowledge that she was the source of the maternal family's ancestry.

Under the circumstances, we conclude the department did not fulfill its statutory duty of inquiry.  (§ 224.2, subd. (b).)  As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the department conducted an adequate, proper, and duly diligent inquiry, and its contrary conclusion was an abuse of discretion.  Because the failure in this case concerned the department's duty of initial inquiry, only state law is involved.  "Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial.  (Cal. Const., art. VI, § 13 ['No judgment shall be set aside … unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice'])."  (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' "  (*In re K.H.* (2022) 84 Cal.App.5th 566, 606–607 (*K.H.*).)

However, in *In re A.R.* (2021) 11 Cal.5th 234, the Supreme Court "recognized that while we generally apply a *Watson*[5] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id*. at p. 609.) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*Id*. at p. 608.) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*Ibid*.) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the department, or the juvenile court. (*Id*. at p. 596.)

"[I]f the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609.) Thus, "the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child [under a standard *Watson* analysis]. The relevant rights under ICWA belong to

---

[5] *People v. Watson* (1956) 46 Cal.2d 818, 820.

Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply. Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this step is critical if the rights of tribes under ICWA and California law are to be meaningfully safeguarded, as was intended by Congress and our state Legislature." (*K.H.*, at p. 591.)

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610.) Here, the department's inquiry "fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law …." (*Id*. at p. 620.) "Where a record is silent or nearly silent with respect to an ICWA inquiry at the first step, a finding of harmlessness necessarily rests on speculation" and "is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes." (*Id*. at p. 611.) Therefore, the error is prejudicial.

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the court with directions to order the department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e) and rule 5.481(a)(5). If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall proceed in compliance with ICWA and related California law. If the court instead

10.

finds that ICWA does not apply, the court shall reinstate its ICWA finding.  In all other respects, the court's order terminating mother and father's parental rights is affirmed.