Filed 6/21/24  In re M.C. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | |
| | D083633 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. J521046) |
| Plaintiff and Respondent, | |
| v. | |
| Kirsten D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Alexander Calero, Judge.  Conditionally reversed and remanded with directions.

Shobita Misra, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, and Lisa Maldonado, Chief Deputy County Counsel, for Plaintiff and Respondent.

Kirsten D. (Mother) is the mother of daughter M.C. (born June 2022) who is the subject of this dependency case. Mother challenges the juvenile court's February 13, 2024 order, made at the contested Welfare and Institutions Code[1] section 366.26 hearing, terminating parental rights. She contends the court and the San Diego County Health and Human Services Agency (Agency) failed to comply with the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law. Agency concedes that, with respect to certain relatives of Mother and presumed father Aaron C. (Father) (Mother and Father are sometimes collectively referred to as Parents), it failed to conduct an adequate inquiry into the potential Native American ancestry of M.C. Agency therefore does not oppose remand for the limited purpose of allowing it to conduct further ICWA inquiry.

We agree with the parties that the juvenile court and Agency failed to ensure compliance with ICWA. We therefore conditionally reverse the court's order terminating parental rights and on remand, direct the court to ensure Agency fulfills its duty of inquiry under ICWA and California law. In so doing, we invite the parties to stipulate to an immediate remittitur to expedite the proceedings. (See California Rules of Court,[2] rule 8.272(c)(1) ["A Court of Appeal may direct immediate issuance of a remittitur only on the parties' stipulation or on dismissal of the appeal under rule 8.244(c)(2)."].)[3]

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2] All further references to rules are to the California Rules of Court.

[3] Although the parties agree that a conditional reversal is necessary to ensure compliance with ICWA and California law, they disagree on the scope of Agency's inquiry duty. Given our decision in this case, we conclude on this

FACTUAL AND PROCEDURAL BACKGROUND

At birth, M.C. tested positive for amphetamines, methamphetamine, and opiates, and showed signs of withdrawal from these controlled substances including high-pitched crying, poor feeding, and "tremors." M.C. spent more than two weeks in intensive care. When discharged, Agency placed her in a licensed foster home.[4]

On June 10, 2022, Agency separately inquired of Parents whether either of them had any Native American heritage. Both responded no. On June 27, Agency filed a petition under section 300, subdivision (b)(1) on behalf of M.C., alleging she was at substantial risk of harm because Mother abused "dangerous" drugs and Father knew of Mother's drug use but failed to intervene. Attached to the petition was an ICWA-010(A) form signed by an

---

limited record that it is unnecessary for us to resolve whether certain family members Mother identifies in her brief (i.e., maternal great-grandmother, paternal step-grandfather, and paternal step-aunts among other relatives) qualify as either "extended family member[s]" (25 U.S.C. § 1903(2) [defining extended family member]; § 224.1, subd. (c) [adopting federal definition]) or "others who have an interest in the child" (§ 224.2, subd. (b)).

[4]     In its letter brief, Agency notes there currently is a split of authority over whether the duty of inquiry under ICWA applies only to children who are removed without a protective custody warrant. (See e.g., *In re Delila D.* (2023) 93 Cal.App.5th 953 (review granted Sept. 27, 2023, S281447) [concluding there is only one duty of inquiry by a social services agency as to whether a dependent child is an Indian child under ICWA, which extends to available extended family members no matter how the child is initially removed from the home]; but see *In re Robert F.* (2023) 90 Cal.App.5th 492 (review granted, July 26, 2023, S279743) [duty of inquiry applies only when the social services agency takes temporary custody of the child without a warrant under exigent circumstances].) Agency notes it disagrees with the logic of *In re Robert F.* and related cases. Because M.C. was not taken into protective custody in this case, Agency had a duty to inquire with M.C.'s extended family members regardless of this split of authority.

3

Agency social worker stating both Mother and Father "gave no reason to believe [M.C.] is or may be an Indian child."

During an Agency interview prior to the detention hearing, Mother reported her "safety network" included maternal great-grandparents Rita D. and Brian D.,[5] who had raised her since she was little; and an older brother, Ryan M., and his wife Lisa. Mother also reported her mother (maternal grandmother) had passed away; and Mother had "siblings on her father's side," but was not in contact with them.

Father reported his safety network included his mother, Dawn P. (paternal grandmother), who at the time was unaware of M.C.; paternal grandmother's family; and a cousin, whom Father did not name. Father also reported he had stepsisters that he had not seen "for years"; and a maternal great-grandparent.

Agency's detention report shows it interviewed and/or had meetings with various relatives of Parents, including maternal great-grandmother, maternal aunt and uncle, and paternal grandmother and paternal step-grandfather, regarding, among other subject matters, M.C.'s placement and development of a safety plan for the child. Despite these interactions with M.C.'s relatives, it does not appear Agency inquired of them whether the child might have Native American ancestry.[6]

---

[5]    Brian D., who was like a father to Mother, died around December 2022. Agency reported maternal great-grandmother was about 90 years old when M.C. went into dependency.

[6]    As we noted in footnote 2, on remand it is up to the juvenile court and the parties to determine, on a more developed record, whether Agency's duty of inquiry under ICWA and California law extends to these relatives, other family members, or any others who have an interest in M.C.

At the detention hearing held in late June 2022, Father filed the required ICWA-020 form stating under penalty of perjury that, as far as he knew, he had no Native American ancestry. During that hearing, Mother's counsel stated Mother also had filled out an ICWA-020 form, also indicating no such ancestry.[7] The juvenile court acknowledged Parents' respective denials of Native American ancestry and found ICWA did not apply. However, the court added that Agency had a continuing obligation to inquire with Parents' family members whether they were aware of any Native American ancestry; that if such information became available, Agency would act "accordingly"; and that its ruling ICWA did not apply was therefore "without prejudice."

Agency's July 2022 jurisdiction and disposition report repeated the juvenile court's finding that ICWA did not apply in this case. During the contested jurisdiction and disposition hearing in late August, the court also repeated its previous ruling that ICWA was inapplicable.

In its February 2023 status review report, Agency again referenced the juvenile court's previous finding that ICWA did not apply. In this report, Agency recommended termination of reunification services for Parents and that the court set a section 366.26 hearing to assess a permanent plan for M.C. In support of its recommendation, Agency noted that Parents had failed to make minimal progress in their respective case plans, including enrolling in drug treatment, taking *any* of the myriad random drug tests scheduled by Agency, consistently visiting M.C., and remaining in contact with Agency.

At a hearing in late May 2023, the juvenile court terminated Parents' reunification services. During that hearing the court also found that "[n]otice pursuant to [ICWA was] not required because the court has reason to know

_____

[7] Mother's ICWA-020 form is not part of the record.

the child is not an Indian child.  Reasonable inquiry has been made to determine whether the child is or may be an Indian child."

At the contested section 366.26 hearing in February 2024, the juvenile court terminated parental rights and found by clear and convincing evidence that adoption was in M.C.'s best interest, a finding Mother does not challenge on appeal.  In so ruling, the court found ICWA did not apply in this case, a finding it made "without prejudice"; and that M.C.'s current caregivers qualified as prospective adoptive parents as to the child.

DISCUSSION

A.  *Guiding Principles*

ICWA reflects a congressional determination to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture."  (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*) ["Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' "].)  ICWA defines an " 'Indian child' " as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); see § 224.1, subd. (a) [adopting federal definition].)

In every dependency proceeding, the juvenile court and social services agency have an "affirmative and continuing duty" to inquire whether a child for whom a section 300 petition is or may be filed "is or may be an Indian Child." (§ 224.2, subd. (a); accord, *In re W.B.* (2012) 55 Cal.4th 30, 53.) This continuing duty "can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)  In the instant case, we are concerned with the initial duty to inquire.

This duty arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2, subd. (a).)  Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members,[8] and others who have an interest in the child whether the child is, or may be, an Indian child.  (§ 224.2, subd. (b); see  rule 5.481 [implementing § 224.2].)  The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child."  (§ 224.2, subd. (c).)  The court must also require each parent to complete form ICWA-020.  (Rule 5.481(a)(2)(C).)

The juvenile court " 'has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so.' "  (*In re N.G.* (2018) 27 Cal.App.5th 474, 484.)  "If the court makes a finding that proper and

---

[8]    An "extended family member" is defined "by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent."  (25 U.S.C. § 1903(2); § 224.1, subd. (c) [adopting federal definition].)

7

adequate further inquiry and due diligence . . . have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence. The court shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry pursuant to Section 224.3." (§ 224.2, subd. (i)(2).)

We review the juvenile court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446 (*Alexzander C.*).) The appellant "has the burden to show that the evidence was not sufficient to support the findings and orders." (*Ibid.*)

B. *Analysis*

Pursuant to its duty under section 224.2, Agency acted properly when, at the commencement of dependency, it asked Parents whether they had any Native American ancestry. They each denied having any knowledge of such ancestry in their respective families. However, as Agency concedes, there is no evidence that it made this same inquiry with paternal grandmother or maternal uncle, despite the fact Agency was in contact with each, including discussing placement of, and a safety plan for, M.C. The paternal grandmother and maternal uncle both qualify as an "extended family member" of M.C., and therefore Agency had a duty of inquiry as to them that was unmet. (See 25 U.S.C. § 1903(2); § 224.1, subd. (c).)

8

We therefore conclude the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that Agency conducted an adequate, proper, and diligent inquiry, and its contrary conclusion was an abuse of discretion. (See § 224.2, subd. (a); accord, *Isaiah W., supra,* 1 Cal.5th at p. 12 [juvenile court has ongoing obligation to ensure the social services agency fulfills its continuing inquiry duties]; *In re K.R.* (2018) 20 Cal.App.5th 701, 709 ["a social services agency has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status"]; see also *Alexzander C., supra,* 18 Cal.App.5th at p. 446 [a finding that ICWA does not apply must be supported by substantial evidence].)

We further conclude this error was prejudicial. "[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*In re K.H.* (2022) 84 Cal.App.5th 566, 610.) Here, Agency admitted its inquiry fell "short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law." (See *id.* at p. 620.) "Where a record is silent or nearly silent with respect to an ICWA inquiry at the first step, a finding of harmlessness necessarily rests on speculation" and "is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes." (*Id.* at p. 611.)

## DISPOSITION

The juvenile court's February 13, 2024 order terminating parental rights is conditionally reversed, and the matter is remanded with directions that Agency comply with the inquiry and documentation provisions under

9

ICWA and California law. The court shall order that, within 30 days of the remittitur, Agency shall perform its inquiry of M.C.'s potential Native American ancestry. If, after completing the initial inquiry, there is no reason to believe that M.C. is an Indian child, the court shall reinstate its order terminating parental rights. If the inquiry produces information substantiating Native American ancestry, the court shall vacate the order and proceed in compliance with ICWA and related California law.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

BUCHANAN, J.