Filed 7/24/24  In re D.B. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re D.B. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.B.,<br><br>Defendant and Appellant. | F086914<br><br>(Super. Ct. Nos. JD141953-01, JD141956-01)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Laura D. Pedicini, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Alexandria M. Ottoman, Deputy County Counsel, for Plaintiff and Respondent.

---

[*]     Before Levy, Acting P. J., Poochigian, J. and Snauffer, J.

-ooOoo-

Appellant S.B. (mother) is the mother of D.B. and G.Y. (collectively the children), who are the subjects of this dependency case. Mother challenges the juvenile court's order issued at a hearing pursuant to Welfare and Institutions Code section 366.22 that resulted in the termination of her family reunification services. Mother contends the juvenile court and the Kern County Department of Human Services (department) failed to comply with their duty of inquiry under the Indian Child Welfare Act (ICWA). The department concedes that it failed to conduct an adequate inquiry into the potential Indian ancestry of the children, and it does not oppose remand for the limited purpose of conducting further ICWA inquiry.[1] We agree with the parties and conditionally reverse the juvenile court's order terminating mother's family reunification services and remand for proceedings to ensure ICWA compliance.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In April 2022, the department filed dependency petitions alleging the children and their three siblings were described by section 300, subdivision (b)(1). The allegations involved mother's failure to supervise and provide adequate food, shelter, and medical treatment for the children and their siblings. The conditions of mother's home were described as filthy with a foul odor and roaches crawling throughout the home.

At the detention hearing held on April 6, 2021, mother was present and appointed counsel. Mother identified Juan R. as the father of D.B., and Harold Y. was identified as the father of G.Y. The juvenile court inquired of mother regarding potential Indian ancestry, and she responded, "I was told that I'm part Indian." She also stated that she

---

[1] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

[2] The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

2.

did not "know anything about what part of India or any of that." Mother explained that she would need to follow up with the maternal grandmother, Lisa B., to obtain additional information on her ancestry. The department was ordered to contact the maternal grandmother using the phone number provided by mother. The juvenile court reserved its finding as to ICWA and detained the children from mother's custody. A combined jurisdiction and disposition hearing was set for April 16, 2021.

In August 2021, the children's newborn sibling, C.B., was taken into protective custody shortly after her birth. During the juvenile court's inquiry at C.B.'s detention hearing, mother denied that she had any Indian ancestry. The department's counsel indicated that there was a previous finding that ICWA was not applicable as to mother in the children's case. The court then found that ICWA was not applicable to C.B. as to mother.

After multiple continuances, the jurisdiction hearing for the children was held on September 17, 2021. The allegations of the original petition were found true, and the disposition hearing was continued to address paternity issues. On October 8, 2021, the juvenile court elevated both Juan and Harold to presumed father status for each of their children. At the continued disposition hearing on November 4, 2021, the children were placed with mother under a plan of family maintenance services.

On February 10, 2022, the department filed supplemental petitions pursuant to section 387 alleging the previous disposition of placement with mother was ineffective in protecting the children and their siblings. The petitions alleged that mother's home was covered in trash, old food, toys, clothing, and dirt. The petition further alleged that the children consumed an unknown amount of mother's prescription medication after pill bottles were left on the floor. The department also filed subsequent petitions pursuant to section 342 alleging the children were described by section 300, subdivision (b)(1) due to mother's untreated mental illness.

3.

Both mother and Juan were present for the detention hearing on the supplemental and subsequent petitions held on February 17, 2022. The children were detained from mother's custody, and a combined jurisdiction and disposition hearing on the petitions was scheduled for April 11, 2022.

The department's jurisdiction report, dated March 23, 2022, recommended that the allegations in the supplemental and subsequent petitions be found true. The disposition report, dated March 24, 2022, recommended that the children remain in out-of-home care with family reunification services provided to mother and Juan. Family reunification services were not recommended for Harold due to his incarcerated status. The ICWA section of the report detailed the juvenile court's previous finding that ICWA was not applicable, and there was no further information provided on the issue.

A family finding social worker had located four of the children's relatives, and three of the relatives were contacted by the department. The maternal grandmother, Lisa S., was interested in placement of the children. G.Y.'s paternal grandmother and paternal aunt also requested placement. The juvenile court subsequently ordered evaluations of the relatives pursuant to the Interstate Compact for the Placement of Children (ICPC) due to the relatives residing in Maryland.

At the jurisdiction hearing on the petitions held on April 11, 2022, the juvenile court found the allegations in both petitions to be true, and the disposition hearing was continued to May 24, 2022. A psychological evaluation was ordered for mother, and an additional continuance was necessary to allow the department to receive the report from mother's psychological evaluation. On July 27, 2022, the court proceeded with disposition, ordered the children removed from mother's custody, and family reunification services were provided to mother. Family reunification services were also provided to D.B.'s father, Juan. G.Y.'s father, Harold, was denied family reunification services pursuant to section 361.5, subdivision (e)(1). A six-month review hearing was set for January 26, 2023.

4.

The department's report for the six-month review hearing recommended that family reunification services be continued for mother and Juan. On January 26, 2023, the six-month review hearing was continued, and the hearing was reset as a combined six- and 12-month review hearing on April 11, 2023. The 12-month review report, dated March 30, 2023, included updated information on the department's ICWA inquiry for C.B. Several paternal family members of C.B. denied that their family had any Indian ancestry. At the combined six- and 12-month review hearing, the juvenile court continued family reunification services for mother, and it set an 18-month review hearing for August 10, 2023. Juan's family reunification services were terminated.

The department's recommendation for the 18-month review hearing was to terminate family reunification services for mother. D.B. and G.Y. were each placed in a separate resource family home, and their siblings were placed together in another resource family home. There was no additional information contained in the ICWA status section of the report. The ICPC evaluation of the maternal grandmother's home was denied, and a social worker was in communication with the maternal grandmother about her request for placement. The department wanted additional assistance to inspect the home because mother moved in with the maternal grandmother.

On August 11, 2023, family reunification services were terminated for mother, and the juvenile court found that plans of adoption and guardianship were not suitable for the children. The children were ordered to remain in foster care with a permanent plan of placement with a fit and willing relative. A hearing pursuant to section 366.3 was set for February 9, 2024.

## DISCUSSION

Mother contends the juvenile court and department failed to adequately discharge their duty of initial inquiry by failing to inquire of the children's extended family members regarding possible Indian ancestry. The department concedes this point, and we accept their concession.

5.

*A.  Applicable Law*

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family.  (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.)  In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)).  An " 'Indian child' " is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe.  (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the department and the juvenile court have an "affirmative and continuing duty to inquire whether a child is or may be an Indian child .…"  (Cal. Rules of Court, rule 5.481(a);[3] see § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.)  The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice."  (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child."  (§ 224.2,

---

**3**      All further references to rules are to the California Rules of Court.

6.

subd. (a).) Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b), 306, subd. (b).) The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) The court must also require each parent to complete form ICWA-020. (Rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the department or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child." (§ 224.2, subd. (e).) As recently clarified by the Legislature, a "reason to believe" exists when the juvenile court or department "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (*Id.*, subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting the Bureau of Indian Affairs, the State Department of Social Services, and the tribes and any other person who may have information. (§ 224.2, subd. (e)(2)(A)–(C).)

The final duty component arises when the court or department has " 'reason to know' " the child is an Indian child. (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.) A "reason to know" exists if one of the following circumstances is present: "(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶] (2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court

7.

that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)–(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that the ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an Indian child. If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry. (§ 224.2, subd. (i)(2).)

### B. Standard of Review

Where the juvenile court finds ICWA does not apply to a child after completion of an initial inquiry, "[t]he finding implies that … social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) We review the court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.) The appellant "has the burden to show that the evidence was not sufficient to support the findings and orders." (*Ibid.*)

### C. Analysis

Pursuant to its duty under section 224.2, the department asked mother whether she had any Indian heritage. Mother indicated that she had been told that she was part Indian by the maternal grandmother. The department had contact with the children's maternal grandmother and two paternal relatives of G.Y. during the proceedings, but there was no

8.

documentation of an inquiry directed toward any of them.  There was also no indication that either of the children's fathers were asked about potential Indian ancestry.  Based upon this information, the juvenile court found ICWA was not applicable.

The department was required under section 224.2, subdivision (b) to ask available parents and extended family members about the children's possible Indian ancestry.  Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins.  (25 U.S.C. § 1903(2); § 224.1, subd. (c).)  There were at least three extended family members, the maternal grandmother, paternal grandmother, and paternal aunt, who were in contact with the department during the proceedings.  The department either failed to ask these extended family members about Indian ancestry or did not document it.  Furthermore, the department failed to document any inquiry of the children's respective fathers.

Under the circumstances, we conclude the department did not fulfill its statutory duty of inquiry.  (§ 224.2, subd. (b).)  As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the department conducted an adequate, proper, and duly diligent inquiry, and its contrary conclusion was an abuse of discretion.  Because the failure in this case concerned the department's duty of initial inquiry, only state law is involved.  "Where a violation is of only state law, we may not reverse unless we find that the error was prejudicial.  (Cal. Const., art. VI, § 13 ['No judgment shall be set aside … unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice'].)"  (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it

reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*In re K.H.* (2022) 84 Cal.App.5th 566, 606–607 (*K.H.*).).)

However, in *In re A.R.* (2021) 11 Cal.5th 234, the Supreme Court "recognized that while we generally apply a *Watson*[4] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id*. at p. 609.) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*Id*. at p. 608.) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*Ibid*.) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the department, or the juvenile court. (*Id*. at p. 596.)

"[I]f the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609.) Thus, "the relevant injury under

---

**4**      *People v. Watson* (1956) 46 Cal.2d 818, 820.

ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child[, under a standard *Watson* analysis].  The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination.  It necessarily follows that [in the context of ICWA and consistent with *In re A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply.  Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this step is critical if the rights of tribes under ICWA and California law are to be meaningfully safeguarded, as was intended by Congress and our state Legislature." (*K.H.*, at p. 591.)

As we explained in *K.H.*, "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, *supra*, 84 Cal.App.5th at p. 610.)  Here, the department's inquiry "fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law." (*Id*. at p. 620.)  "Where a record is silent or nearly silent with respect to an ICWA inquiry at the first step, a finding of harmlessness necessarily rests on speculation" and "is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes." (*Id*. at p. 611.)  Therefore, the error is prejudicial.

**DISPOSITION**

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5).  If, after determining that an adequate

11.

inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall proceed in compliance with ICWA and related California law.  If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA finding.  In all other respects, the court's order terminating mother's family reunification services is affirmed.