Filed 9/17/24  In re S.B. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.B. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JASMINE B.,<br><br>    Defendant and Appellant. | F087642<br><br>(Super. Ct. Nos. JD144602-00, JD144603-00, JD144905-00)<br><br>**OPINION** |

### THE COURT*

APPEAL from orders of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Elizabeth M. Giesick, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Detjen, Acting P. J., Franson, J. and Snauffer, J.

Appellant Jasmine B. (mother) is the mother of now five-year-old S.B., three-year-old B.B., and one-year-old R.B. (collectively, the children), who are the subjects of this dependency case. Mother challenges the juvenile court's orders issued at a disposition hearing that resulted in the removal of the children from mother's custody. On appeal, mother contends the juvenile court and the Kern County Department of Human Services (department) failed to comply with their duty of inquiry under the Indian Child Welfare Act (ICWA). Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In April 2023, the department filed original petitions alleging S.B. and B.B. were described by Welfare and Institutions Code section 300, subdivision (b)(1).[2] The allegations involved ongoing domestic violence between mother and her boyfriend and mother's untreated mental health issues. S.B. and B.B. were taken into protective custody pursuant to warrants on April 25, 2023. The Indian Child Inquiry Attachment forms (ICWA-010) attached to the petitions indicated that mother was asked about S.B. and B.B.'s Indian status, and mother gave no reason to believe they are or may be Indian children.

The department's detention report set forth mother's child welfare history, which involved numerous referrals and three prior dependency proceedings from 2014 to 2022. In October 2019, a petition was filed on behalf of S.B. due to physical abuse, neglect, and a prior dependency case. S.B. was removed from mother's custody, and family reunification services were ordered for mother on December 16, 2019.

B.B. was removed shortly after his birth in September 2020, due to mother's mental health issues and substance abuse. Mother was reportedly recovering from

---

[1] The sole issue on appeal concerns ICWA; therefore, we primarily restrict our facts to those bearing on that issue.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

fractures that were caused by B.B.'s father, Christian P., in April 2020. Christian was found to be B.B.'s biological father in December 2020, and mother and Christian were ordered to complete family reunification services. Both children were returned to mother's custody in March 2022. S.B.'s father, A.B., was also granted shared custody with mother.

At the detention hearing held on April 27, 2023, mother and Christian were not present. S.B. and B.B. were detained from mother's custody, and a combined jurisdiction and disposition hearing was set for June 7, 2023. The whereabouts of Christian were determined to be unknown by the juvenile court.

The department's jurisdiction report, dated June 21, 2023, recommended that the allegations in the original petition be found true. The department's disposition report, dated June 23, 2023, recommended that S.B. and B.B. remain in out-of-home care and mother be provided family reunification services. S.B. and B.B. were placed together in the home of a nonrelative extended family member.

In May 2023, the social worker attempted to contact mother, Christian, and A.B. regarding family finding and ICWA, but none of the parents could be reached by phone. A maternal aunt, D.R., contacted the social worker, and she explained that she was in agreement with S.B. and B.B. remaining in the care of their current resource family. The resource family almost adopted B.B. during prior dependency proceedings. D.R. stated that the maternal grandparents and a maternal uncle live in Las Vegas. She did not know the current location of another maternal aunt, M.S., and the maternal great-grandmother lived in Oregon. D.R. indicated that there was no Indian ancestry in her family.

The social worker eventually found information for another sibling, maternal grandparents, maternal uncle, four maternal aunts, maternal great-aunt, and maternal great-grandparents. Attempts to reach the identified maternal relatives by phone were unsuccessful, and voice messages were left for family members where possible. At the time of the report, there were no relatives applying for placement, but D.R. visited with

the children often. On June 20, 2023, the social worker discovered that Christian was incarcerated in Los Angeles County. A notice of the upcoming hearing was sent to the facility, and an inmate transport request was submitted on his behalf.

On July 28, 2023, the juvenile court found the allegations in the original petitions true as to S.B. and B.B., and it continued the disposition hearing for ICWA compliance at the department's request. In August 2023, R.B. was taken into protective custody after mother tested positive for amphetamines at the time of her birth. The department filed an original petition on behalf of R.B. alleging that she was described by section 300, subdivisions (b)(1) and (j).

At a detention hearing held on August 9, 2023, mother and A.B. were both present and represented by counsel. The juvenile court inquired of mother and A.B. regarding possible Indian ancestry, and each of them denied having any Indian ancestry in their families. At a continued detention hearing on August 11, 2023, R.B. was ordered detained from her parents' custody, and a combined jurisdiction and disposition hearing was set for September 12, 2023.

The report prepared for R.B.'s disposition hearing, dated October 24, 2023, recommended that family reunification services be provided for mother and A.B. R.B. was placed in a resource family home in Bakersfield. The department's family finding social worker contacted several maternal family members in August 2023. The maternal grandmother, maternal aunt D.R., maternal great-grandmother, maternal uncle, and maternal cousin denied that there was Indian ancestry in their family. The maternal grandmother and maternal uncle were not aware of the identity of mother's biological father. R.B.'s paternal uncles both denied that their family had Indian ancestry, and it was reported that A.B.'s family came from Israel.

On September 12, 2023, mother completed a Parental Notification of Indian Status form (ICWA-020), which provided no circumstances to suggest that R.B. may be an Indian child. A.B. was found to be R.B.'s biological father, and the jurisdiction hearing

for R.B. was continued to October 25, 2023. At the continued jurisdiction hearing, the allegations in the original petition for R.B. were sustained. The disposition hearing for each of the children was continued on several occasions for ICWA compliance.

In November 2023, B.B.'s father, Christian, the paternal great-uncle, and paternal great-grandmother reported possible Indian ancestry with the "Cochise Tribe" in Arizona. The paternal aunt denied having Indian ancestry, but she requested additional information about taking placement of B.B. The social worker attempted to contact other paternal relatives by phone, and messages were left when possible. The paternal great-grandmother explained that the possible Indian ancestry came through her maternal grandmother's family. She was unable to recall her grandmother's name, but she referred the social worker to the paternal grandmother for additional information. The social worker sent a text message and attempted to contact the paternal grandmother by phone, but there was no response.

The department submitted a declaration of its paralegal regarding the ICWA inquiry for B.B. on January 29, 2024. The paralegal obtained the information gathered by the department regarding Christian's possible Indian ancestry. It was determined that the "Cochise Tribe" was not listed in the BIA "Designated Agents" listing or the "Tribal Leaders" directory.

At the continued disposition hearing held on January 30, 2024, mother was present and represented by counsel. The juvenile court received and reviewed the social worker's reports and the paralegal's declaration regarding the ICWA inquiry. Mother's counsel submitted on the department's recommendation, and the disposition proceeded without contest. The children were ordered to remain in out-of-home placement, and mother was provided family reunification services. The juvenile court found that there was no reason to know the children were Indian children. The court's ICWA finding was made without prejudice due to the department's continuing duty to comply with ICWA. A six-month review hearing was set for June 25, 2024.

**DISCUSSION**

Mother claims the juvenile court and department failed to adequately discharge their duty of initial inquiry by failing to inquire of any Apache tribes regarding B.B.'s possible Indian ancestry. The department contends that its inquiry was adequate.

## A. Applicable Law

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.) In any "proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe … have a right to intervene" (25 U.S.C. § 1911(c)), and may petition the court to invalidate any foster care placement of an Indian child made in violation of ICWA (25 U.S.C. § 1914; see § 224, subd. (e)). An " 'Indian child' " is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions].)

In every dependency proceeding, the department and the juvenile court have an "affirmative and continuing duty to inquire whether a child is or may be an Indian child .…" (Cal. Rules of Court, rule 5.481(a);[3] see § 224.2, subd. (a); *In re W.B.* (2012) 55 Cal.4th 30, 53; *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.) The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566.)

---

[3]     All further references to rules are to the California Rules of Court.

The initial duty to inquire arises at the referral stage when the reporting party is asked whether it has "any information that the child may be an Indian child." (§ 224.2, subd. (a).) Once a child is received into temporary custody, the initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§§ 224.2, subd. (b), 306, subd. (b).) The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) The court must also require each parent to complete form ICWA-020. (Rule 5.481(a)(2)(C).)

Next, a duty of further inquiry arises when the department or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child .…" (§ 224.2, subd. (e).) As recently clarified by the Legislature, a "reason to believe" exists when the juvenile court or department "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (*Id.*, subd. (e)(1).)

If there is a reason to believe an Indian child is involved, the juvenile court or the department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e).) Further inquiry includes, but is not limited to, "[i]nterviewing the parents, Indian custodian, and extended family members," and contacting the Bureau of Indian Affairs (BIA), the State Department of Social Services, and the tribes and any other person who may have information. (§ 224.2, subd. (e)(2)(A)–(C).)

The final duty component arises when the court or department has " 'reason to know' " the child is an Indian child. (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 567.) A "reason to know" exists if one of the following circumstances is present: "(1) A person having an interest in the child … informs the court that the child is an Indian child[;] [¶]

7.

(2) The residence … of the child [or] the child's parents … is on a reservation or in an Alaska Native village[;] [¶] (3) Any participant in the proceeding … informs the court that it has discovered information indicating that the child is an Indian child[;] [¶] (4) The child … gives the court reason to know that the child is an Indian child[;] [¶] (5) The court is informed that the child is or has been a ward of a tribal court[; or] [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d)(1)–(6).)

If the juvenile court makes a finding that proper and adequate further inquiry and due diligence have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that ICWA does not apply, subject to reversal if the court subsequently receives information providing reason to believe the child is an Indian child. If the court receives such information, it must direct the social worker or probation officer to conduct further inquiry. (§ 224.2, subd. (i)(2).)

### B. Standard of Review

Where the juvenile court finds ICWA does not apply to a child after completion of an initial inquiry, "[t]he finding implies that … social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 885.) We review the court's ICWA findings for substantial evidence. (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.) We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance. (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446.) The appellant "has the burden to show that the evidence was not sufficient to support the findings and orders." (*Ibid.*)

### C. Analysis

Mother contends that the department's inquiry was inadequate because it failed to contact any Apache tribes about B.B.'s potential Indian ancestry. In support of this

contention, mother references the name "Cochise" as a "famous leader[] of the Apache people." Thus, she argues that the department should have made an initial inquiry of the Apache tribes. However, this factual material was not presented below and is improper for us to consider. (See *In re K.P.* (2009) 175 Cal.App.4th 1, 5 [disregarding Internet information outside the appellate court record purporting to indicate that parents' reported tribe might be affiliated with a federally recognized Indian tribe].)

We reject mother's claim that the department failed to conduct an adequate inquiry into the potential Indian ancestry identified by B.B.'s paternal family. The only tribe the paternal relatives ever claimed to have potential Indian ancestry from was a nonfederally recognized tribe. The department conducted interviews of multiple maternal and paternal family members of the children, and none of the information provided a basis to conclude that further inquiry of the BIA or any federally recognized tribes was necessary. ICWA imposes no duty on the department to investigate ancestry related to a nonfederally recognized tribe. (See *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 338 [" 'Indian tribe' is defined so as to include only federally recognized Indian tribes."], citing 25 U.S.C. § 1903(8); *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1009 ["[A]n Indian child is one with a tribal affiliation, not merely Indian ancestry."].)

In the present case, the department documented that it undertook family finding efforts for both maternal and paternal relatives, and the attempts to contact those relatives were contained in its reports. The inquiry yielded reliable information about B.B.'s possible tribal ancestry through the paternal relatives, but there was no information provided to suggest that the ancestry involved a federally recognized tribe requiring further inquiry.

In sum, because the department's inquiry of several extended family members yielded reliable information that B.B. had possible Indian ancestry but was not affiliated with a federally recognized tribe, we conclude the juvenile court's ICWA finding was proper. (See *In re Dezi C.* (Aug. 19, 2024, S275578, ___ Cal.5th ___ [2024 Cal.

9.

LEXIS 4634, p. 11] ["If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law (rule 5.481(a)(5)), there is no error and conditional reversal would not be warranted even if the [department] did not inquire of everyone who has an interest in the child."].)  Therefore, we affirm.

## DISPOSITION

The orders are affirmed.